RECORD NO. 15-1354

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals

## For The District of Columbia Circuit

# ALL AMERICAN TELEPHONE COMPANY, INC.; E-PINNACLE COMMUNICATIONS, INC.; CHASECOM,

*Petitioners*,

**v.**

# FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES OF AMERICA,

*Respondents*,

-------------------------------------------------------------------------------

## AT&T CORP.,

*Intervenor for Respondent.*

### ON REVIEW OF AN ORDER BY THE FEDERAL COMMUNICATIONS COMMISSION

———————

## BRIEF OF PETITIONERS

———————

Jonathan E. Canis
ARENT FOX LLP
1717 K Street, NW
Washington, DC 20006
(202) 857-6117

*Counsel for Petitioners*

## CERTIFICATE AS TO PARTIES, RULINGS
## AND RELATED CASES

Petitioners All American Telephone Company, Inc., e-Pinnacle

Communications, Inc., and Chasecom, by their undersigned counsel and pursuant

to D.C. Circuit Rule 28(a)(1), submit their Certificate as to Parties, Rulings and

Related Cases.

## I.     PARTIES AND AMICI

The parties and intervenors in the instant case are:

- Petitioners:  All American Telephone Company, Inc., e-Pinnacle

   Communications, Inc., and Chasecom.

- Respondents:  The Federal Communications Commission and the

   United States of America.

- Intervenor:  AT&T Corp. filed a motion for leave to intervene in

   support of Respondents in the above-captioned case, dated November

   10, 2015.

Petitioners are not aware of any other intervenors or amici in this case as of the

date of this submission.

## II.     RULING UNDER REVIEW

The ruling under review is an order of the Federal Communications

Commission:   *In the Matter of AT&T Corp. v. All American Telephone Company,*

*Inc., e-Pinnacle Communications, Inc., and Chasecom*, 30 FCC Rcd 8958, EB

i

Docket No. 14-209, File No. EB-09-MD-010, 2015 WL 4986292 (adopted August 20, 2015; released August 21, 2015) (the *Damages Order*).

## III. RELATED CASES

Petitioners certify that the ruling under review in the instant case was not previously brought before this Court, any other United States court of appeals, or any other court (whether federal or local) in the District of Columbia or elsewhere.

The ruling under review is related to a pending federal court case: *All American Telephone Company, Inc. et al. v. AT&T Corp.*, 07 CV 861 (WHP) (S.D.N.Y.), a collection action filed by Plaintiffs against AT&T Corp. for recovery of compensation under state law equitable principals for services provided to AT&T Corp. The judge in that case, Judge William Pauley, stayed the case pending referral to the Federal Communications Commission under the doctrine of primary jurisdiction. The FCC ruling under review was made in response to actions taken by AT&T Corp. and Petitioners pursuant to Judge Pauley's referral.

## CORPORATE DISCLOSURE STATEMENT

All American Telephone Company, Inc., e-Pinnacle Communications, Inc., and Chasecom are petitioners, asking this Court for review of a final order by the Federal Communications Commission.  For purposes of this Brief, they are referred to as the Collection Action Plaintiffs, or CAPs.  Petitioners hereby provide their corporate disclosure statement, pursuant to Circuit Court Rule 26.1 and Federal Rule of Appellate Procedure 26.1.

Neither All American Telephone Company; Inc., e-Pinnacle Communications, Inc.; nor Chasecom have parent companies; nor does any publicly held corporation have any ownership interest in any of the CAPs.

All American Telephone Company, Inc., is a Nevada corporation with its principle place of business in Las Vegas, Nevada.  It is a provider of telecommunications services.

e-Pinnacle Communications, Inc. is a Utah corporation with its principal place of business in Provo, Utah.  It is a provider of telecommunications services.

Chasecom was a California corporation with its principal place of business in Santa Barbara, California.  At all times relevant to the underlying litigation that is the subject of its Petition for Review, it was a provider of telecommunications services.  It is no longer active.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ...............i

CORPORATE DISCLOSURE STATEMENT ....................................... iii

TABLE OF CONTENTS.........................................................iv

TABLE OF AUTHORITIES ................................................. vii

GLOSSARY................................................................ xiii

STATEMENT OF JURISDICTION....................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................................1

STATUTES AND REGULATIONS.........................................................4

STATEMENT OF THE CASE.................................................................4

       BACKGROUND ........................................................6

    1.     The *Damages Order* Is an Incomplete Response to a Federal District Court Referral from a Pending Collection Action ..................6

    2.     Access Charges:  Rates that Local Exchange Carriers Charge to Interexchange Carriers, Prescribed by the FCC under §§ 201-205 of the Communications Act or Set by LECs and IXCs by Contract ..............................................................6

    3.     The Nationwide Dispute Over "Access Stimulation"...........................7

    4.     The FCC's Refusal to Finally Resolve Any Access Stimulation Dispute Has Resulted in Inconsistent Rulings Among Federal District and Circuit Courts on the Issue of Equitable Relief................9

THE ORDER ON REVIEW ........................................................................ 11

1.    The FCC's Rulings in the *Damages Order* ......................................... 11

2.    The *Damages Order* Rulings Are Purposely Vague and Require this Court to Determine the Scope of the FCC's Findings, and Whether Such Findings Exceed the Limits of Its Authority .............. 12

SUMMARY OF ARGUMENT ............................................................... 13

STANDING ............................................................................................. 15

STANDARD OF REVIEW ..................................................................... 16

ARGUMENT .......................................................................................... 17

I.     THE FCC'S FINDING THAT THE CAPS ARE COMMON CARRIERS, SUBJECT TO ITS TITLE II JURISDICTION, IS WRONG AS A MATTER OF LAW ................................................... 17

II.    THE *DAMAGES ORDER* IS PURPOSELY AMBIGUOUS IN ITS DISCUSSION OF THE CAPS' CLAIMS UNDER STATE LAW – TO THE EXTENT IT CAN BE READ TO LIMIT THE CAPS' ABILITY TO PROSECUTE SUCH CLAIMS, THE ORDER IS ULTRA VIRES AND MUST BE VACATED IN PART .......................................................................................... 23

    A.    The *Damages Order* Conflates Permissible Conclusions of Law that are Consistent with FCC Jurisdiction, and Statements Relating to State Law Claims in Equity that are Ultra Vires .......................................................................... 23

    B.    The *Damages Order* Cannot Bar State Claims by Preemption or by Action of the Filed Rate Doctrine ............... 27

        1.    The FCC Has Not Preempted State Law Equity Claims ............................................................................... 29

        2.    The Twin Purposes of the Filed Rate Doctrine Would Not Be Served by Preemption ........................... 35

C.    The FCC Cannot Deprive Parties of Legal Recourse in
      Cases Where There Is a "Gap" in Regulation...........................37

D.    Denying the CAPs' Right to Recourse Under State Law
      Would Yield  Unlawful, Absurd, and Inequitable Results .......39

III.   THE FCC'S AWARD OF DAMAGES AGAINST THE CAPS
       IS UNLAWFUL AND MUST BE VACATED..................................40

A.    The FCC's Ruling ..................................................................40

B.    The FCC's Award Of Damages Violates the
      Communications Act, the FCC's Own Rules, Federal
      Precedent, and So Must Be Vacated and Set Aside.................41

IV.   THE CAPS ARE ENTITLED TO DECLARATORY RELIEF........46

CONCLUSION ........................................................................................49

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

vi

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Advamtel LLC, et al. v. AT&T Corp.*,
 118 F. Supp. 2d 680 (E.D. Va. 2000) ............................................................34

*All American Tel. Co., Inc., et al. v. AT&T Corp.*,
 No. 07-cv-861 (WHP) (S.D.N.Y. 2007) .......................................................4, 6

*\*All American Tel. Co. Inc. et al. v. AT&T Corp.*,
 No. 1:07-cv-00861-WHP, Order Referring Issues to the Federal
 Communications Commission (S.D.N.Y. February 5, 2010) ......................25

*All American Tel. Co., Inc., et al. v. AT&T, Inc.*,
 2009 WL 691325 (S.D.N.Y. Mar. 16, 2009) ...................................................6

*All American Tel. Co., Inc., et al. v. AT&T, Inc.*,
 2010 WL 7526933 (S.D.N.Y. Jan. 19, 2010) ..................................................6

*Bates v. Dow Agrosciencess. LLC*,
 544 U.S. 431 (2005) .......................................................................................31

*Connect Insured Tel. Inc. v Qwest Long Distance, Inc.*,
 No. 3:10-CV-1879-D, 2012 WL 2995063 (N.D. Tex. July 23, 2012) ..........28

*Farmers and Merchants Mut. Tel. Co. of Wayland, Iowa v. FCC*,
 668 F.3d 714 (D.C. Cir. 2011) ..................................................8, 9, 21, 22, 23

*Freightliner Corp. v. Myrick*,
 514 U.S. 280 (1995) .......................................................................................30

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
 505 U.S. 88 (1992) .........................................................................................30

*\*Chief Authorities are Designated by an Asterisk.*

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
    954 F.2d 485 (8th Cir. 1992) .........................................................................36

*Hanes Corp. v. Millard*,
    531 F.2d 585 (D.C. Cir. 1976).......................................................................46

*Hypercube LLC v. Comtel Telecom Assets LP*,
    No. 3:08-cv-2298-G, 2009 WL 3075208 (N.D. Tex. Sept. 25, 2009) ..........34

*ICC v. Chicago Rock Island & Pacific RR*,
    501 F.2d 908 (8th Cir. 1974) .........................................................................26

*In re Core Commcn's, Inc.*,
    531 F.3d 849 (D.C. Cir. 2008)........................................................................46

*In re Long Distance Telecomms. Litig.*,
    831 F.2d 627 (6th Cir. 1987) .........................................................................26

*Jones v. Rath Packing Co.*,
    430 U.S. 519 (1977).......................................................................................30

*\*Manhattan Telecomms. Corp. v. Global NAPs, Inc.*,
    No. 08-cv-3829 (JSR), 2010 WL 1326095 (Mar. 31, 2010).............36, 37, 38

*\*Metrophones Telecomms., Inc. v. Global Crossing Telecomms., Inc.*,
    423 F.3d 1056 (9th Cir. 2005) .........................................................30, 31, 36

*\*New Valley Corp. v. Pacific Bell*,
    15 FCC Rcd 5128 (2000)................................................................32, 41, 42

*North County Commcn's Corp. v. Allegiance Telecom Int'l, Inc.*,
    No. 10-cv-180-PK, 2010 WL 4483587 (D. Or. Oct. 4, 2010) ............... 30-31

*Northern Valley Commcn's, L.L.C. v. AT&T Corp.*,
    No. 1:14-cv-01018-RAL (D.S.D. Aug. 20, 2015)........................................30

*Northern Valley Commcn's, LLC v FCC*,
    717 F.3d 1017 (2013) ......................................................................................9

*Northern Valley v. AT&T Corp.,
    659 F. Supp. 2d 1056 (D.S.D. 2009) ............................................................35

*Northern Valley Comms., LLC v. Sprint Comms. Co. Ltd. P'ship,
    No. 08-cv-1003-KES, 2010 WL 936723 (D.S.D. Mar. 15, 2010) ...............26

Peerless Network, Inc. v. MCI Commcn Servs., Inc.,
    2015 WL 2455128, No. 14 C 7417 (N.D. Ill. May 21, 2015).......................27

Qwest Commc'ns Co. LLC v. Tekstar Commc'ns Inc.,
    No. 10-cv-490 (MJD/SRN), 2010 WL 2772442 (D. Minn. July 12, 2010).....10

*Qwest Commc'ns Corp. v. Farmers and Merchants Mut. Tel. Co.,
    22 FCC Rcd 17973 (2007), revised on recon.,
    24 FCC Rcd 14801 (2009) aff'd on recon.,
    25 FCC Rcd 3422 (2010)......................................................8, 22, 31, 32

Qwest Commcn's Corp. v Aventure Telecom. Servs., Inc.,
    86 F. Supp. 3d 933 (S.D. Iowa, 2015) ........................................................27

*RCA Global Communications, Inc. v. Western Union Telegraph Company,
    521 F. Supp. 998, (S.D.N.Y. 1981) .............................................................42

*Rice v. Sante Fe Elevator Corp.,
    331 U.S. 218 (1947)....................................................................................30

Salve Regina College v. Russell,
    499 U.S. 225 (1991)....................................................................................16

Sancom, Inc. v. Qwest Commc'ns Corp.,
    No. 07-cv-4147-KES, 2010 WL 960005 (D.S.D. Mar. 12, 2010) ...............11

Splitrock Props., Inc. v. Sprint Commc'ns Co. Ltd. P'ship,
    No. 09-cv-4075-KES, 2010 WL 1329634 (D.S.D. Mar. 30, 2010) .............11

Tekstar Comms., Inc. v. Sprint Comms. Co., L.P.,
    No. 08-cv-1130 (JNE/RLE), 2009 WL 2155930 (D. Minn. July 15, 2009)....35

Tuscon Airport Authority v. General Dynamics Corp.,
    136 F.3d 641 (9th Cir. 1998) .....................................................................16

*Union Tel. Co. v. Qwest Corp.*,
 495 F.3d 1187 (10th Cir. 2007) .................................................................28

*\*US LEC Commcn's LLC v. Qwest Commcn's Co. LLC*,
 No. 10-cv-4106 (JBS/JS), 2011 WL 2474262 (D.N.J. June 20, 2011) ......30, 39

*Wegoland Ltd. v. NYNEX Corp.*,
 27 F.3d 17 (2d Cir. 1994) ...........................................................................35

*WorldCom v. Paetec*,
 2005 WL 2145499, No. Civ. A. 04-1479
 (E.D. VA., Aug. 31, 2005), *aff'd*,
 204 Fed. Appx. 27, 2006 WL 3026293 (4th Cir. Oct. 25, 2006) ..................28

*Worldcom, Inc. v. Graphnet, Inc.*,
 343 F.3d 651 (3d Cir. 2003) ........................................................................26

*Wyeth v. Levine*,
 555 US 555 (2009).......................................................................................26

*XChange Telecom Corp.v. Sprint Spectrum L.P.*,
 No. 1:14-cv-54, 2014 WL 4637042 (N.D.N.Y. Sept. 16, 2014)...................27

## ADMINISTRATIVE DECISIONS

*Access Charge Reform,* Seventh Report and Order
 16 FCC Rcd 9923 (2001)................................................................................7

*\*All American Tel. Co., Inc., et al. v. AT&T Corp.*,
 26 FCC Rcd. 723 (2011), *recon. dismissed*,
 28 FCC Rcd 3469 (2013)................................................................17, 26, 33

*\*AT&T Corp. v. All American Tel. Co. Inc. et al.,*
 30 FCC Rcd 8958 (2015) (*Damages Order*)...... 1, 2, 3, 4, 6, 7, 11, 12, 13, 14
                                                    17, 19, 20, 21, 23, 24, 25, 27
                                                    28, 29, 31, 34, 36, 38, 39, 40
                                                    41, 42, 44, 47, 48, 49

*AT&T Corp. v All American Tel. Co. et al.,
    26 FCC Rcd 3477 (2011) (Liability Order) recon dismissed,
    29 FCC Rcd 6393 (2013)............................................. 1, 5, 11, 13, 18, 19, 20,
                                                        21, 23, 24, 38, 48, 49

Connect America Fund,
    26 FCC Rcd 22497 (1997)..............................................................7, 8, 9, 10

*Implementation of the Telecommunications Act of 1996,
    12 FCC Rcd 22497 (1997)....................................................................43, 45

In the Matter of Communications Satellite Corporation [Comsat] for
Authority to Construct a 'Standard B' Earth Station Antenna and
Associated Facilities at Hickam Air Force Base,
    97 FCC2d 82 (1984) ...........................................................................42

*Total Telecomms. Servs. et al. v. AT&T Corp.,
    16 FCC Rcd 5726 (2001)....................................................................33

U.S. Telepacific Corp. v. Tel-American of Salt Lake City, Inc.,
    19 FCC Rcd 24552 (2004)...................................................................33

## STATUTES

28 U.S.C. § 2201 ...................................................................................46

28 U.S.C. § 2342(l) ................................................................................1

28 U.S.C. § 2344 ...............................................................................1, 15

*47 U.S.C. § 153(11) ............................................................................18

*47 U.S.C. § 153(51) ........................................................................18, 19

*47 U.S.C. § 153(53) ........................................................................18, 19

47 U.S.C. §§ 201-205 .....................................................................6, 7, 19

47 U.S.C. § 206...................................................................................17

47 U.S.C. §§ 206-209 ...................................................................................19

47 U.S.C. § 208.................................................... 1, 5, 14, 17, 22, 34, 41

47 U.S.C. § 208(b)(1)...................................................................................45

47 U.S.C. § 214............................................................................................20

47 U.S.C. § 402(a) ..................................................................................1, 15

**RULE**

*Fed. R. Civ. P. 8(d)(2)................................................................................39

**REGULATIONS**

*47 C.F.R. § 1.722(h) ...................................................................................43

47 C.F.R. § 61.26 .........................................................................................29

# GLOSSARY

| | |
|---|---|
| Access Charges | The charges that IXCs pay to LECs to compensate them for the origination or termination of interexchange telephone traffic, prescribed by the FCC pursuant to 47 U.S.C. §§ 201-205, or set by IXCs and LECs by contract. |
| Access Service | "[T]he offering of access to telephone exchange services or facilities for the purpose of the origination or termination of telephone toll services."  47 U.S.C. § 153. |
| Act | The Communications Act of 1934, as amended by the Telecommunications Act of 1996.  Also referred to as the "Communications Act." U.S. Code, Title 47. |
| All American | All American Telephone Company, Inc., one of the three Petitioners, jointly referred to as the Collection Action Plaintiffs or CAPs. |
| AT&T | AT&T Corporation. |
| CAPs | Collection Action Plaintiffs (All American, e-Pinnacle and ChaseCom). |
| ChaseCom | ChaseCom, one of the three Petitioners, jointly referred to as the Collection Action Plaintiffs CAPs. |
| CLEC | Competitive Local Exchange Carrier. |
| Common Carrier | Defined in the Act as entities acting as a "common carrier for hire" (47 U.S.C. §153(11)); a "telecommunications carrier" will be treated as a common carrier "only to the extent that it is engaged in providing telecommunications services" (47 U.S.C. §153(51)). |
| *Connect America Order* | *Connect America Fund*, 26 FCC Rcd 17663 (2011). |

| | |
|---|---|
| *Damages Order* | *In the Matter of AT&T Corp. v. All American Telephone Company, Inc., e-Pinnacle Communications, Inc., and Chasecom*, 30 FCC Rcd 8958 (2015). |
| e-Pinnacle | e-Pinnacle Communications, Inc., one of the three Petitioners, jointly referred to as the Collection Action Plaintiffs or CAPs. |
| Farmers & Merchants | Farmers and Merchants Mutual Telephone Company |
| *Farmers I* | *Qwest Commcn's Corp. v. Farmers and Merchants Mut. Tel. Co.,* 22 FCC Rcd 17973 (2007), *revised on recon.,* 24 FCC Rcd 14801 (2009) *aff'd on recon.,* 25 FCC Rcd 3422 (2010), *aff'd, Farmers and Merchants Mut. Tel. Co. of Wayland, Iowa v. FCC*, 668 F.3d 714 (D.C. Cir. 2011). |
| *F&M 2nd Recon.* | *Qwest Commcn's Corp. v. Farmers & Merchants Mut. Tel. Co.*, *Second Order on Reconsideration*, 24 FCC Rcd. 14801 (2009). |
| *Farmers Appeal* | *Farmers & Merchants Mut. Tel. Co. v. FCC*, 668 F.3d. 714 (D.C. Cir. 2011). |
| FCC | Federal Communications Commission. |
| IXC | Interexchange Carrier. |
| ILEC | Incumbent Local Exchange Carrier. |
| LEC | Local Exchange Carrier. |
| *Liability Order* | *AT&T Corp. v All American Tel. Co. et al.*, 28 FCC Rcd 3477 (2013). |
| Qwest | Qwest Communications Corporation or Qwest Communications Company LLC. |

| *Liability Reconsideration Order* | *AT&T Corp. v. All American Tel. Co. et al.*, 29 FCC Rcd 6393 (2014). |
| --- | --- |
| SDNY Court | Federal District Court for the Southern District of New York |
| *7ᵗʰ Report & Order* | *Access Charge Reform*, Seventh Report and Order, 16 FCC Rcd 9923 (2001). |
| Sprint | Sprint Communications Company, L.P. |
| Telecommunications Service | Services offered "for a fee directly to the public" (47 U.S.C. §153(53)). |

## STATEMENT OF JURISDICTION

47 U.S.C. § 208 provided the FCC with subject-matter jurisdiction to hear the formal complaint filed by AT&T against All American, e-Pinnacle and ChaseCom (jointly, the Collection Action Plaintiffs or CAPs). That gave rise to the *Liability Order*, issued by the FCC in favor of AT&T and against the CAPs. The CAPs agree that § 208 provided the FCC with authority to hear the Liability phase complaint, but contend that the rulings in the *Liability Order* established that the CAPs are not common carriers, and so deprived the FCC of § 208 authority to proceed with a Damages complaint.

This Court's subject-matter jurisdiction over this review of the *Damages Order* is granted in 47 U.S.C. § 402(a) and 28 U.S.C. §§ 2342(l) and 2344.

No affected party sought reconsideration of the *Damages Order*, and so that *Order* became final and appealable 30 days after its August 21, 2015 release date. Within the 60 days allowed under 28 U.S.C. § 2344, and specifically on October 16, 2015, the CAPs filed a timely Petition for Review with this Court.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

In this Brief, the CAPs raise the following issues:

1.    In light of the findings of the Federal Communications Commission (FCC) in *In the Matter of AT&T Corp. v. All American Telephone Company, Inc., e-Pinnacle Communications, Inc., and ChaseCom*, 30

1

FCC Rcd 8958 (2015) (the *Damages Order*) (JA 752-760) and *AT&T Corp. v All American Tel. Co. et al*., 28 FCC Rcd 3477 (2013) (JA 355-373) (the preceding *Liability Order*) can  CAPs be classified as "common carriers" under the federal Communications Act of 1934, as amended?

2.    In light of the findings of the FCC in the *Liability Order*, did the FCC have statutory authority to exercise jurisdiction over the CAPs under Title II of the Communications Act in the *Damages Order*?

3.    Does the *Damages Order* prevent the CAPs from pursuing their state law claims in equity against AT&T Corp. in the federal District Court for the Southern District of New York?

4.    Does the FCC have authority to tell the federal District Court for the Southern District of New York that the Court may not hear the CAPs' state law-based equitable claims against AT&T Corp.?

5.    Is the FCC's regulatory scheme governing regulated rates charged by common carriers so pervasive as to preempt the prosecution of equitable claims under state law in federal district courts?

6.    The FCC invalidated Petitioners' federal tariffs, ab initio, eight years after the tariffs took effect and services began to be invoiced under those tariffs.  Did this action create a "regulatory void" or "regulatory

2

gap" that must be filled by courts applying equitable principles, in order to resolve disputes that occurred during that 8-year period?

7.   The FCC's *Damages Order* found that the CAPs may not receive compensation from AT&T Corp.  Was this determination limited to regulated compensation within the FCC's jurisdiction under Title II of the Communications Act, or does this finding preclude the CAPs' claims for relief under state law equitable principles of quantum meruit and/or unjust enrichment?

8.   Do the FCC's findings in the *Damages Order* preclude the CAPs from asserting affirmative defenses against AT&T Corp.'s counterclaims in the federal District Court for the Southern District of New York?

9.   Did the FCC's establishment of monetary "damages" due to AT&T Corp. from the CAPs violate the Communications Act, the Commission's own rules and established federal court precedent?

10.  Was the FCC's establishment of monetary "damages" due to AT&T Corp. from the CAPs ultra vires of the FCC's authority?

11.  The CAPs contend that the FCC's *Damages Order* refuses to respond to multiple questions referred by the federal District Court for the Southern District of New York, and that the *Damages Order* is purposely structured to be vague and inconclusive.  Are the CAPs

3

entitled to declaratory relief from this Court in order to eliminate any ambiguity left by the *Damages Order*, and to finally – after a delay of six years – determine if Plaintiffs may proceed with their collection action before the SDNY Court?

## STATUTES AND REGULATIONS

Relevant statutes and regulations are included in the Addendum to this Brief.

## STATEMENT OF THE CASE

This case involves a petition for review of the *Damages Order,* an order of the Federal Communications Commission, 30 FCC Rcd 8958 (2015). (JA 752-760) The *Damages Order* is a final order in a six-year long proceeding before the FCC that was initiated by a primary jurisdiction referral from the federal District Court for the Southern District of New York. That court is hearing a collection action filed by the CAPs, who are the Petitioners in this case, against AT&T. 07-cv-861 (WHP)(S.D.N.Y.). (JA 7-29) The CAPs allege that they terminated calls made by AT&T's customers for a period of years and that AT&T refused to compensate them for it. The SDNY Court stayed the case pending referral in January 2010, presenting a total of 17 questions regarding the effectiveness of the CAP tariffs, whether the CAPs were due compensation under their tariffs or under some other legal theory, and if so, what level of compensation should they be paid. 2010 WL 7526933 (S.D.N.Y. Jan. 19, 2010). (JA 131-139)

4

In response to the referral, the FCC initiated a formal complaint proceeding under 47 U.S.C. § 208, and named AT&T the complainant and the CAPs the defendants.  At AT&T's request, the FCC bifurcated its complaint proceeding into two phases – an initial "Liability" phase would look to the effectiveness of the CAP tariffs, and if liability was found, a second "Damages" phase would be initiated.  On March 25, 2013 the FCC issued its *Liability Order*, which found, inter alia, that the CAPs did not provide service pursuant to valid and applicable tariffs, and so violated the Communications Act.  28 FCC Rcd 3477 (2011).  (JA 355) The CAPs sought reconsideration and clarification of the order, which was denied.  28 FCC Rcd 3469 (2013). (JA 350)  The CAPs did not seek review.

On August 21, 2015, the FCC issued its *Damages Order*, finding that the CAPs were subject to its jurisdiction, and that they were not eligible for compensation from AT&T, and the FCC ordered the CAPs to refund to AT&T those amounts that AT&T initially paid them for service.  The FCC did not answer the SDNY Court's questions regarding whether compensation was due under alternative legal theories, and the level of such compensation.  The CAPs did not seek reconsideration of the *Damages Order,* and filed a timely Petition for Review with this Court on October 16, 2015.

## BACKGROUND

### 1.     The *Damages Order* Is an Incomplete Response to a Federal District Court Referral from a Pending Collection Action

The *Damages Order* under review was initiated as a response to a primary jurisdiction referral from the federal District Court for the Southern District of New York (SDNY Court).[1]  The complaint is a collection action by the Petitioners in this case – All American Telephone Company, e-Pinnacle Communications, Inc. and ChaseCom (referred to herein as the Collection Action Plaintiffs, or CAPs) against AT&T, for claims under their federal tariffs, or, in the alternative, in quantum meruit.  The SDNY Court initially referred two issues to the Federal Communications Commission, under the doctrine of primary jurisdiction,[2] and later referred an additional 15 separate questions jointly submitted by the parties, and stayed the case.[3]

### 2.     Access Charges:  Rates that Local Exchange Carriers Charge to Interexchange Carriers, Prescribed by the FCC under §§ 201-205 of the Communications Act or Set by LECs and IXCs by contract

When the FCC effected the divestiture of the AT&T telephone monopoly in 1984, it established two categories of wireline telephone companies:  Local

---

[1] *All American Tel. Co., Inc., et al. v. AT&T Corp.*, No. 1:07-cv-00861-WHP (S.D.N.Y.) (complaint filed March 6, 2007).  (JA 30-51)

[2] *All American Tel. Co., Inc., et al. v. AT&T, Inc.*, 2009 WL 691325 (S.D.N.Y. Mar. 16, 2009). (JA 52-60)

[3] *All American Tel. Co., Inc., et al. v. AT&T, Inc.*, 2010 WL 7526933 (S.D.N.Y. Jan. 19, 2010); (JA 131-135) *All American Tel. Co., Inc., et al. v. AT&T, Inc.*, No. 1:07-cv-00861-WHP (S.D.N.Y. February 5, 2010). (JA 136-139)

Exchange Carriers (LECs), which originate calls from, and terminate calls to, telephone subscribers in local markets; and Interexchange Carriers (IXCs), which carry the calls across long interstate or intrastate distances between LECs.  The FCC also established the access charge system – charges set under §§ 201-205 of Title II of the Communications Act, which regulates common carriers.[4]  As the market for competitive services grew, and competitive telephone carriers entered the market, the FCC distinguished between Incumbent Local Exchange Carriers and new-entrant Competitive Local Exchange Carriers (CLECs).  In 2001, the FCC established rules setting and regulating the access charges that CLECs could charge IXCs.[5]  Under the FCC's rules, CLECs could collect access charges either through valid tariffs, or through contracts negotiated with IXCs.[6]

### 3.    The Nationwide Dispute Over "Access Stimulation"

The dispute underlying the *Damages Order* involves a form of arbitrage that the FCC has labeled "access stimulation."  IXCs use the pejorative "traffic pumping" for the same practice.  The FCC defines access stimulation as:

> Access stimulation occurs when a LEC with high switched access rates enters into an arrangement with a provider of high call volume operations such as chat lines, adult entertainment calls, and "free" conference calls.  The arrangement inflates or stimulates the

---

[4] 47 U.S.C. §§ 201-205.

[5] *Access Charge Reform*, Seventh Report and Order, 16 FCC Rcd 9923 (2001) (*7th Report & Order*).

[6] *Damages Order*, 30 FCC Rcd at 8963 ¶ 13 n.50, (JA 758) citing *7th Report and Order*.

access minutes terminated to the LEC, and the LEC then shares a portion of the increased access revenues resulting from the increased demand with the "free" service provider, or offers some other benefit to the "free" service provider.[7]

While a few access stimulation disputes began in the late 1990s, the practice sparked a nation-wide series of federal cases in the mid-2000s, following the adoption of access stimulation models by numerous ILECs, and later CLECs, at first in Iowa, and then in numerous other states. Some of these disputes, such as *Qwest v. Farmers & Merchants Telephone*[8] were prosecuted by IXCs in formal complaints before the FCC. However, most of the disputes – including the case at bar – were prosecuted by the LECs in federal district court collection actions filed against IXCs for refusals to pay access charges for access stimulation calls made by the IXCs' customers to the LECs. By 2009, when the FCC initiated the SDNY Court's referral in the instant case, over a dozen similar access stimulation collection actions were pending in multiple federal courts.[9]

The FCC handled both direct IXC complaints and federal court referrals from LEC collection actions the same way: the FCC named the IXC the plaintiff in all cases and bifurcated all proceedings into an initial "Liability" phase, which would determine

---

[7] *Connect America Fund*, 26 FCC Rcd 17663, 17874 ¶ 656 (2011).

[8] *Qwest Commc'ns Corp. v. Farmers and Merchants Mut. Tel. Co.*, 22 FCC Rcd 17973 (2007), *revised on recon.*, 24 FCC Rcd 14801 (2009) *aff'd on recon.*, 25 FCC Rcd 3422 (2010), *aff'd*, *Farmers and Merchants Mut. Tel. Co. of Wayland, Iowa v. FCC*, 668 F.3d 714 (D.C. Cir. 2011).

[9] CAP Petition for Declaratory Ruling, filed in FCC EB-09-MD-010, dated May 20, 2009, at 9-13 (JA 79-83) (listing pending collection actions).

8

if the LECs' federal tariffs were valid and if the LECs complied with the

Communications Act.  If not, the dispute would finally be resolved in a subsequent

"Damages" phase.  The FCC completed several "Liability" phase proceedings, in each

case finding that the LEC violated the Communications Act because that portion of its

customer base that was responsible for generating access stimulation traffic did not

meet the definition of the terms "end user" and/or "customer" in the LEC's tariff, and

therefore the LECs' tariffs were not valid as applied to those specific customers.

Several of these FCC rulings – *Farmers & Merchants v. FCC*[10] (Qwest complaint),

*Northern Valley v. FCC*[11] (Sprint and Qwest complaints), were upheld by this Court.

Despite these rulings, the FCC never concluded a "Damages" phase hearing – the cases

apparently settled after the Liability ruling – until the case at bar.  As discussed herein,

the FCC has never fully responded to a federal district court referral from any access

stimulation case.

### 4. The FCC's Refusal to Finally Resolve Any Access Stimulation Dispute Has Resulted in Inconsistent Rulings Among Federal District and Circuit Courts on the Issue of Equitable Relief

As noted above, the FCC has never fully answered the questions referred by any

of the courts that pursued primary jurisdiction referrals, including in the case at bar.

Moreover, in 2011, the FCC issued its *Connect America Order*, which adopted new

---

[10] *Farmers and Merchants Mut. Tel. Co. of Wayland, Iowa v. FCC*, 668 F.3d 714 (D.C. Cir. 2011)(*Farmers Appeal*).
[11] *Northern Valley Commc'ns, LLC v FCC*, 717 F.3d 1017 (2013).

rules regarding access stimulation and prescribed rates for access stimulation traffic on a prospective basis – but the FCC expressly refused to provide any guidance to courts hearing access stimulation disputes:  "Because the rules we adopt are prospective, they will have no binding effect on pending complaints."[12]  Indeed, in that order, the FCC expressly declined to answer a Petition for Declaratory Ruling filed by All American, which sought clarification of the law on access stimulation, and noted that the same questions were pending in a dozen cases in different federal courts.[13]

As a result of the FCC's refusal to provide guidance to the courts, there have been a rash of inconsistent rulings on the fundamental issue in the case at bar:  If a federal tariff does not apply (for whatever reason), can the affected party seek recovery through state law equitable claims, including quantum meruit or unjust enrichment?

> For example, courts currently disagree about whether an LEC can recovery [sic] from an IXC under an unjust enrichment theory or a quantum meruit theory. *Compare Sancom, Inc. v. Qwest Commc'ns Corp.*, 643 F.Supp.2d 1117,1125–26 (D.S.D.2009) (finding unjust enrichment claim barred by filed rate doctrine), *with N. Valley Commc'ns, LLC v. Qwest Commc'ns Corp.*, 659 F.Supp.2d 1062, 1070 (D.S.D.2009) (holding filed rate doctrine does not defeat unjust enrichment claim where it is alleged that tariff does not apply); *see also Tekstar Commc'ns*, 2009 WL 2155930, at *3 ("In the absence of clarity regarding how those services are classified and regulated, it would be premature to address application of the filed tariff doctrine to Tekstar's claim of quantum meruit.") (citations omitted).[14]

---

[12] *Connect America Fund*, 26 FCC Rcd at 17889, ¶ 699, fn. 1182.

[13] *Id.* at 17889 ¶ 698.

[14] *Qwest Commc'ns Co. LLC v. Tekstar Commc'ns Inc.*, Civil No. 10-490 (MJD/SRN), 2010 WL 2772442 (D. Minn. July 12, 2010) at *7.  *See also*, *e.g.*,

## THE ORDER ON REVIEW

### 1.    The FCC's Rulings in the *Damages Order*

The *Liability Order* found that the CAPs were "shams" that "did not provide any telecommunications services to the public"[15] and that they never had valid tariffs in force.[16]  The *Damages Order* adopts these findings by reference (30 FCC Rcd at 8959 ¶ 3) (JA 752-753), and bases its damages rulings on them.  *Id.* at 8959 ¶ 3; (JA 752-753) 8962 ¶ 9; (JA 753-754) 8964 ¶ 16 (JA 755).  The following rulings in the *Damages Order* are subject to the instant petition for review:

- AT&T is awarded "damages" of $252,496.37, which is a refund of amounts paid by AT&T.  *Id.* at 8958 ¶ 1, (JA 752) 8960 ¶ 4, (JA 753) 8962 ¶ 11. (JA 754)

- The CAPs are subject to the FCC's jurisdiction under Title II of the Communications Act.  *Id.* at 8961 ¶¶ 8-10. (JA 753-754)

- The CAPs did not provide any service to AT&T.  *Id.* at 8961 ¶ 10 n.36; (JA 758) 8962 ¶¶ 11, 13; (JA 754) 8964 ¶ 16 n.68; (JA 759)

---

*Splitrock Props., Inc. v. Sprint Commc'ns Co. Ltd. P'ship*, No. CIV. 0-4075-KES, 2010 WL 1329634 (D.S.D. Mar. 30, 2010) at *9 and *Sancom, Inc. v. Qwest Commc'ns Corp.*, No. Civ. 07-4147-KES, 2010 WL 960005 (D.S.D. March 12, 2010) at *10 (both discussing and citing inconsistent rulings among district courts on the issue of whether state equity claims may be pursued).

[15] *Liability Order*, 28 FCC Rcd at 3494 ¶ 38. (JA 362-363)

[16] *Id.* at 3494-95 ¶ 38(JA 362-363)

8965 ¶ 20 n.81. (JA 759) The CAPs did not confer any benefit on

AT&T.  *Id.* at 8963 ¶13. (JA 754)

- The CAPs are not entitled to any compensation.  *Id.* at 8962 ¶¶ 11, 13; (JA 754) 8965 ¶ 20 n.81. (JA 759)

- The CAPs may not seek equitable relief.  *Id.* at 8963 ¶ 13. (JA 754)

- The SDNY Court's referred questions asking if CAPs may seek recovery under state law equity theory or any other theory do not merit answering because they are "moot."  *Id.* at 8966 ¶ 21. (JA 756)

**2.     The *Damages Order* Rulings Are Purposely Vague and Require this Court to Determine the Scope of the FCC's Findings, and Whether Such Findings Exceed the Limits of FCC Authority**

The *Damages Order* finds that the CAPs "did not provide service" to

AT&T.  In parts of the *Damages Order*, the FCC appears to make it clear that its

finding is restricted to the matter over which it has expert jurisdiction:  the CAPs

billed AT&T for "access services they did not provide under valid tariffs;"[17] the

CAPs "did not provide the services pursuant to valid and applicable tariffs."[18]  If

indeed this is the entirety of the FCC's finding, and it is limited to a determination

that the CAPs may not collect regulated access charges pursuant to the tariffs that

were on file at the time, the CAPs do not object to it.  However, in other portions

of the *Damages Order*, it appears that the FCC is attempting to go beyond the

---

[17] *Damages Order*, 30 FCC Rcd at 8958 ¶ 1. (JA 752)
[18] *Id.* at 8961 ¶ 9, (JA 753-754) see also 8962 ¶ 11. (JA 754)

scope of its regulatory authority, and instruct the SDNY Court that the CAPs may not seek damages from AT&T under any theory, including state law equitable theories:  "[the CAPs] did not provide a service to, or confer a benefit on, AT&T"[19]; "Because we found in the *Liability Order* that Defendants did not provide any service to AT&T, those issues [the unanswered SDNY Court's referral questions, including questions re the applicability of equity claims based in state law] have no bearing on Defendants' entitlement to compensation, and we therefore dismiss them as moot."[20]

## SUMMARY OF ARGUMENT

The *Damages Order* contains purposely ambiguous language that makes it impossible to determine whether or not the *Order* exceeds the scope of the FCC's authority.  For this reason, this Court must identify the lawful aspects of the *Order*, and those parts that are ultra vires.

In the *Liability Order*, the FCC found that the CAPs were "shams" and voided their tariffs ab initio.  The CAPs argue that, in doing so, the *Liability Order* establishes that the CAPs can no longer be classified as "common carriers" within the definitions set by the Communications Act, and so can no longer be subject to the FCC's Title II jurisdiction.  The FCC simply ignores the statutory definitions cited by the CAPs, and effectively argues that the CAPs are common carriers, and

---

[19] *Id*. at 8963 ¶ 13. (JA 754)
[20] *Id*. at 8966 ¶ 21.  (JA 756)

13

remain subject to the FCC's jurisdiction, because they believed they were common carriers in the past.   The FCC does not support  how this assertion could impart jurisdiction on the FCC.  This Court must vacate that portion of the *Damages Order*, and confirm that the CAPs are not common carriers, and could not be made subject to the FCC's Damages phase § 208 complaint proceeding.

The *Damages Order* appears to state that the CAPs may not prosecute their claims in quantum meruit, which were pled in the alternative in their collection action against AT&T, and which claims remain pending before the SDNY Court. The *Order* never states that the FCC has preempted the CAPs' equitable claims under state law, but rather includes two sentences that appear to have that intent. The CAPs demonstrate that the FCC may not preempt state law claims, either under the Filed Rate Doctrine, or under theories of Field or Conflict Preemption, and this position is supported by extensive precedent, including the FCC's own prior orders.  This Court must find that the FCC's regulatory regime does not preempt state law claims.

Finally, the *Damages Order* awards "damages" of $252,496.37 to AT&T, requiring the CAPs to refund all payments that AT&T made to them.  In doing so, the FCC violates the Communications Act, its own rules, and extensive federal court precedent, which do not allow automatic refunds, but require a party to prove pecuniary harm in order to obtain damages.  Moreover, the FCC's findings in the

14

*Damages Order* would render the CAPs incapable of defending themselves against AT&T's claims for consequential and other damages – a potential liability of about $20 million – which claims currently are pending before the SDNY Court.

The CAPs ask that this Court: issue a Declaratory Judgment that, as a result of the *Liability Order*, the CAPs cannot be defined as common carriers, and are not subject to the FCC's Title II regulatory authority; issue a Declaratory Judgment that the *Damages Order* does not, and cannot, preempt the CAPs' equitable clams based on state law; and vacate the damages award against the CAPs, noting that AT&T is free to pursue those claims in the pending SDNY Court case.

## STANDING

47 U.S.C. § 402(a) and 28 U.S.C. § 2344 permit "[a]ny party aggrieved by" a final order of the FCC to appeal to this Court.  AT&T filed a Supplemental Complaint for Damages against the CAPs with the FCC on December 1, 2014, and the FCC initiated a Damages phase hearing in File No. EB-09-MD-010.  On August 21, 2015, the FCC released its *Damages Order* which inter alia, found the CAPs liable for damages and made other rulings adverse to the CAPs.  The *Damages Order* is the order under review in the instant case, and as the parties aggrieved by that *Order*, the CAPs have standing to seek review of it.

15

## STANDARD OF REVIEW

All arguments raised in this Application for Review require de novo review by the Court.  Argument I concerns the FCC's jurisdiction vel non over the CAPs under Title II of the federal Communications Act.   Questions of a federal agency's jurisdiction require de novo review.[21]  Argument II concerns another jurisdictional question – whether the FCC's ruling can prevent the CAPs from pursuing claims in equity under state law in a pending collection action before a federal district court. Issues of state law interpretation require de novo review.[22]  Argument III asserts that a "damages" award against the CAPs is ultra vires the FCC's statutory authority and contrary to federal court precedent, and that it unlawfully impinges on the CAPs' rights to pursue claims under state law in federal court.  This includes both jurisdictional and state law issues, and so requires de novo review. Finally, argument IV seeks a declaratory judgment regarding the scope of the FCC's statutory authority and its ability to restrict the CAPs' prosecution of claims in equity based on state law in federal district court.  These are all issues of law regarding the respective jurisdiction of federal courts and the FCC, and require de novo review.[23]

---

[21] *Tuscon Airport Authority v. General Dynamics Corp*., 136 F.3d 641, 644 (9th Cir. 1998).
[22] *Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991).
[23] *Id. at* 238 (1991).

**ARGUMENT**

## I.    THE FCC'S FINDING THAT THE CAPS ARE COMMON CARRIERS, SUBJECT TO ITS TITLE II JURISDICTION, IS WRONG AS A MATTER OF LAW

After the FCC issued its *Liability Order*, the CAPs filed a petition

requesting, *inter alia*, clarification that the rulings in that order determined that the

CAPs are not, and never were, common carriers as defined by the Communications

Act, and so were no longer subject to Commission jurisdiction.[24]  The FCC

dismissed the arguments as "not ripe for reconsideration" because the issues would

be addressed in the subsequent Damages phase of the case.[25]  The *Damages Order*

rejected the CAPs arguments, and asserted Title II jurisdiction over them.[26]

The Act's definition of "common carrier" is critical to the case at bar

because only common carriers are subject to the FCC's Title II jurisdiction,

including its authority to hear complaints under 47 U.S.C. § 208 and award

damages under 47 U.S.C. § 206.[27]  The CAPs therefore repeated these

jurisdictional arguments in their Answer and Affirmative Defenses to AT&T's

---

[24] Petition for Reconsideration and Clarification, filed in EB-09-MD-010, dated April 24, 2013, at 23-25 (*Recon Petition*). (JA 399-401)

[25] *Reconsideration Order*, 29 FCC Rcd at 6398 ¶ 13. (JA 437)

[26] *Damages Order*, 30 FCC Rcd at 8960-61 ¶¶ 8-10. (JA 753-754)

[27] *E.g.*, *All American Tel. Co. et al. v. AT&T Corp.*, 26 FCC Rcd 723 (2011) (JA 328) (non-common carriers are not subject to § 208 complaints.)

17

Supplemental Complaint for Damages[28] and supporting Legal Analysis.[29]   These

pleadings cited the definition of "common carrier" under the Communications Act:

The Act defines "common carriers" as entities acting as a "common carrier for

hire" (47 U.S.C. § 153(11)); states that a "telecommunications carrier" will be

treated as a common carrier "only to the extent that it is engaged in providing

telecommunications services" (47 U.S.C. § 153(51)); and defines

"telecommunications service" as service offered "for a fee directly to the public"

(47 U.S.C. § 153(53)).[30]

    As the CAPs demonstrated in their Damages phase pleadings, the FCC's

*Liability Order* found that the CAPs did not provide service to the general public,

but only to a few chat and conference operators (and in the case of All American,

only one service provider, Joy Communications);[31] that the CAPs never collected a

fee for the service they provided to these few chat and conference operators, and

that their tariffs were void and inapplicable to all services at issue at all times

relevant to the case.[32]   The *Liability Order* expressly finds that the CAPs "were

sham entities that did not provide local telecommunications services or terminate

---

[28] Filed December 1, 2014, at ¶¶ 5, 17, 29, 32, 37, 38, 56, 61 and *passim* (Answer).
(JA 539-540, 543-544, 548, 550, 554, 555-556, 562-563, 566)
[29] Filed December 1, 2014, at 7-8 (Brief). (JA 615-616)
[30] *E.g.*, Answer at 27 ¶ 56. (JA 562-563)
[31] Answer at 12 ¶ 29; 14 ¶ 32 & 30 ¶ 61. (JA 548-549, 550, 566)
[32] Answer at 12 ¶ 29, (JA 548) citing *Liability Order*, 28 FCC Rcd at 3488 ¶ 25;
(JA 360) see also *Liability Order*, 28 FCC Rcd at 3492-94 ¶¶ 34-37 (JA 362) & ¶
38. (JA 362-363)

calls to any 'user' of local telecommunications services;"[33] the CAPs "did not, however, obtain any unbundled network elements that would have enabled them independently to provide local telecommunications services to the public;"[34] "other evidence in the record contradicts this unsubstantiated claim [that the CAPs provided service to the public] (such as e-Pinnacle's admission that it did not provide dialtone or telecommunications services). . . . Thus, although Defendants provided some CLEC services, they did not do so to the public at large."[35]  Given these express findings, it is impossible to find that the CAPs meet the statutory requirements of providing telecommunications services to the public for a fee. Because the CAPs cannot meet the statutory definition of "common carriers," they are not subject to the rate regulation and rate prescription requirements of §§ 201-205 of the Communications Act, or the damages and formal complaint provisions of §§ 206-209.[36]

    In the *Damages Order*, the FCC simply ignores these arguments, and fails to even mentions the CAPs' statutory definitional arguments based on §§153(53) and 153(51) of the Act.  Instead, the FCC asserts that the CAPs are common carriers because: 1) they "held themselves out as common carriers;" 2) operated with

---

[33] *Liability Order*, 28 FCC Rcd at 3494 ¶ 38. (JA 362-363)
[34] *Id*. at 3483 ¶ 17 n.60. (JA 367)
[35] *Id*. at 3484 ¶ 17 & n.70. (JA 358, 368)
[36] Answer at 19 ¶ 38 (JA 555) & 65, Second Affirmative Defense (JA 600-601); Legal Analysis at 7-8. (JA 615-616)

nationwide authority under § 214 of the Act; 3) had state certificates; 4) had federal tariffs on file; and 5) billed under those tariffs.[37]

But the *Liability Order* already negated all five of these assertions by finding that: 1) the CAPs did not "provide local exchange service to the public at large" and lacked the facilities "used by CLECs to provide any telecommunications service to the public;"[38] 2) § 214 does not confer operating authority absent a valid tariff or contract;[39] 3) the CAPs did not comply with the provisions of their state certificates;[40] 4) the CAP federal tariffs were void *ab initio*;[41] and 5) the CAPs never had the right to bill under those tariffs[42] and their local customers were never billed, and never paid for any service.[43]  Indeed, the *Damages Order* cites the *Liability Order* for the proposition that the CAPs "did not provide access services."[44]  The FCC cannot have it both ways – the findings that it made in order to deny the CAPs the ability to bill under their tariffs are the same findings that determine that the CAPs did not provide telecommunications services to the

---

[37] *Damages Order*, 30 FCC Rcd at 8960-61 ¶ 8.  (JA 753)

[38] *Liability Order*, 28 FCC Rcd at 3488 ¶ 25 (JA 360) (cited in *Damages Order*, 30 FCC Rcd 8964 ¶ 16, n.68). (JA 759)

[39] *Liability Order*, 28 FCC Rcd at 3494 ¶ 37. (JA 362)

[40] *Id.* at 3485-86 ¶¶ 19 - 21; (JA 358-359) 3488-89 ¶¶ 25- 26; (JA 360) 3493 ¶ 36. (JA 362)

[41] *Id.* at 3492-94 ¶¶ 34-37 (JA 362) & ¶ 38. (JA 362-363)

[42] *Id.* (JA 362-363)

[43] *Id.* at 3494 ¶ 38. (JA 362-363)

[44] *Damages Order*, 30 FCC Rcd at 8964 ¶ 16 n.68. (JA 759)

general public for a fee, and thus remove the CAPs from the statutory definition of

"common carrier" and from any continuing FCC Title II jurisdiction.

The FCC further notes that the CAPs sued AT&T in their SDNY collection

action to recover their tariffed rates for the provision of access service, and sought

referral of issues to the FCC, and somehow concludes that these actions vest

jurisdiction in the FCC.[45]  They do not – the CAPs did indeed believe they were

common carriers and that they were providing service under valid federal tariffs,

and initiated suit on the basis of that belief.  It was not until the FCC issued its

*Liability Order* – six years after the SDNY Court issued its first referral order –

that the FCC established that the CAPs' beliefs were in error.  It was at this point

that the FCC determined that the CAPs were not common carriers, and from that

point on, the CAPs denied continuing Title II jurisdiction over them.

Finally, the *Damages Order* cites one court ruling as precedent supporting

its continuing assertion of jurisdiction over the CAPs:  the D.C. Circuit's ruling in

the *Farmers Appeal* decision.[46]   While it is correct that this Court rejected

Farmer's argument that the FCC lacked jurisdiction over it,[47] that decision is

inapposite to the case at bar.  In the *Damages Order*, the FCC found that "Farmers

is the incumbent local exchange carrier in Wayland, Iowa, serving approximately

---

[45] *Id.* at 8961 ¶ 8. (JA 753)
[46] *Farmers Appeal,* 668 F.3d 714.
[47] *Id.* at 719.

800 access lines for local residents.  Farmers provides local exchange and exchange access services."[48]   In other words, Farmers was a "real" telephone company that provided typical residential and business telecommunications services, in addition to the access stimulation traffic at issue in the case.  This Court correctly ruled that the outcome of the FCC's complaint proceeding could not serve to deprive the FCC of "subject matter jurisdiction ab initio" . . . "a Commission ruling that Farmers [provided service outside the terms of its tariff] could not immunize it from the complaint process."[49]

In contrast, in the case at bar, the FCC found the CAPs to be "shams" that never provided telecommunications service or access service, never had legitimate end user customers, and found their tariffs void *ab initio*.  Moreover, unlike Farmers, the CAPs are not attempting to evade the FCC's § 208 complaint process – they obviously participated in the Liability phase of the complaint proceeding, and did not seek judicial review of the FCC's decision once it was affirmed on reconsideration.  Indeed, at the time, the CAPs fully believed they were common carriers, providing service to legitimate end user customers pursuant to valid federal tariffs, and so believed they were subject to the FCC's § 208 authority.  However, once the FCC ruled that the CAPs were wrong in all three of

---

[48] *Qwest Commc'ns Corp. v. Farmers & Merchants Mut. Tel. Co.*, 24 FCC Rcd. at 14801 ¶ 2 (2009).
[49] *Farmers Appeal*, 668 F.3d at 719.

22

these beliefs, the consequence of those rulings was to determine that the CAPs no longer met the statutory definition of common carrier, and so could no longer be subject to the FCC's Title II jurisdiction on a going forward basis. The FCC was fully empowered to issue the *Liability Order*, but its authority terminated with that ruling. For these reasons, the *Farmers Appeal* decision is inapposite. The FCC has offered no showing to justify its continuing jurisdiction over the CAPs after it made its findings in the *Liability Order*. To the extent that the FCC attempts to enforce such jurisdiction – as in the imposition of the damages award against the CAPs – the *Damages Order* must be vacated and set aside.

## II.   THE *DAMAGES ORDER* IS PURPOSELY AMBIGUOUS IN ITS DISCUSSION OF THE CAPS' CLAIMS UNDER STATE LAW – TO THE EXTENT IT CAN BE READ TO LIMIT THE CAPS' ABILITY TO PROSECUTE SUCH CLAIMS, THE ORDER IS ULTRA VIRES AND MUST BE VACATED IN PART

### A.   The *Damages Order* Conflates Permissible Conclusions of Law that are Consistent with FCC Jurisdiction, and Statements Relating to State Law Claims in Equity that are Ultra Vires

The *Damages Order* maintains a purposeful ambiguity in its discussion of whether the CAPs provided compensable "service" to AT&T. Throughout the *Order*, the FCC repeatedly finds that the CAPs "did not provide [service] <u>under valid tariffs;</u>"[50] "did not provide the services <u>pursuant to valid and applicable</u>

---

[50] *Damages Order*, 30 FCC Rcd at 8958 ¶ 1(emphasis added). (JA 752)

tariffs;"[51] "The *Liability Order* found that Defendants did not provide any service to AT&T that would justify billing under their tariffs;"[52] that stipulations and expert testimony regarding calls to conference and chat operators have no "bearing on the separate and distinct question of whether Defendants actually provided access services."[53] To the extent that these statements reflect the FCC's finding that, under the Communications Act and the FCC's rules, the CAPs did not provide a cognizable regulated service, and so may not collect regulated access charges through enforcement of their tariffs, the CAPs do not object – these are legal conclusions based on areas within the FCC's expertise. In response, the CAPs will withdraw their claims before the SDNY Court that are based on the Communications Act and their tariffs.

But the *Damages Order* then states that the CAPs "did not provide a service to, or confer a benefit on, AT&T."[54] This statement could be read to be a dispositive ruling that the CAPs did not provide "any service" to AT&T cognizable under any legal theory, including state law claims in equity. Such a ruling would be beyond the FCC's expertise and the scope of its complaint proceeding, and so would be ultra vires. It appears that the Commission has purposely obfuscated this issue. The SDNY Court referred the following question:

---

[51] *Id.* at 8961 ¶ 9 (emphasis added). (JA 753-754)
[52] *Id*. at 8962 ¶ 11 (emphasis added). (JA 754)
[53] *Id*. at 8964 ¶ 16 & n. 68 (emphasis added). (JA 755, 759)
[54] *Id.* at 8963 at ¶ 13. (JA 754)

> If Plaintiffs did not provide regulated service to AT&T, are Plaintiffs entitled to compensation to be established under a quantum meruit, quasi-contract or constructive contract theory, or some other theory?[55]

The FCC refused to answer this question:

> The remaining issues that the Court referred [including the above-cited question] are predicated on the assumption that Defendants provided a service to AT&T. Because we found in the *Liability Order* that Defendants did not provide any service to AT&T, those issues have no bearing on Defendants' entitlement to compensation, and we therefore dismiss them as moot.[56]

The FCC's switch between references to "services pursuant to a valid tariff" and "any service" without such a qualifier is inherently confusing.

However, if the FCC's finding of "mootness" is intended to be a dispositive statement of fact that AT&T never received a benefit from the actions of the CAPs that may be compensable under state law principles of equity, it is ultra vires and requires vacature. Nowhere in the record of the Liability or Damages phases of the complaint proceeding at issue was there a discussion of the CAPs' provision of services and compensable value outside of a tariff or negotiated contract – whether by state law principles of quantum meruit, or constructive or implied contract and unjust enrichment. Indeed, the FCC did not allow any discovery in the proceeding.

---

[55] *All American Tel. Co. Inc. et al. v. AT&T Corp.*, No. 1:07-cv-00861-WHP (S.D.N.Y. February 5, 2010), Order Referring Issues to the Federal Communications Commission, at Exhibit A, Question #3. (JA 138)

[56] *Damages Order*, 30 FCC Rcd at 8966 ¶ 21 (emphasis added) (footnotes omitted). (JA 756)

In any event, these issues are beyond the expertise of the FCC, and a determination of those matters is reserved to the courts.[57]  Moreover, the FCC may not consider, much less place a value on, claims against AT&T, because in access payment cases, AT&T (and all IXCs) are acting as unregulated customers, not regulated carriers.  As such, the IXCs are not subject to the FCC's Title II jurisdiction, and the FCC is without authority to consider claims against them.[58]

For these reasons, the *Damages Order's* finding that the CAPs provided "no service" must be limited to the only ruling the FCC could make within its regulatory authority and expertise – that the CAPs did not provide any service cognizable under the FCC's rules, for which the CAPs could compel compensation

---

[57] *Wyeth v. Levine*, 555 US 555, 576-77 (2009)(Courts do not defer to an agency's conclusions regarding preemption of state-law claims.);  *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 654-57 (3d Cir 2003) (reversing dismissal of claims of unjust enrichment and quantum meruit); *In re Long Distance Telecomms. Litig.*, 831 F.2d 627, 633 (6th Cir. 1987) (holding that state law claims "do not require agency expertise for their treatment and are within the conventional experience of judges"); *Northern Valley v. Sprint*, No. Civ. 08-1003-KES, 2010 WL 936723 at *10 (D.S.D. March 15, 2010) (refers question of tariff validity and classification of service, but not state law claims, finding that this question is within Court's expertise.  Cites with approval Sprint argument that "Legal questions [re state claims] are for the court to determine because 'there are no issues requiring the views of the administrative agency.'  *ICC v. Chicago Rock Island & Pacific RR*, 501 F.2d 908, 913 (8th Cir. 1974.)")

[58] *All Am. Tel. Co. v. AT&T Corp.*, 26 FCC Rcd 723 (2011) (JA 328) (nonpayment of access charges does not constitute a violation of the Communications Act, and FCC does not have authority to consider claims for payment or damages) (footnote 32 (JA 334) contains a comprehensive list of federal cases holding that the FCC does not, and cannot, act as a "collection agent" for carriers against customers) *recon. denied*, 28 FCC Rcd 3469 (2013) (JA 350) (*All American v. AT&T Recon. Order*).

via their tariffs – and the *Order* cannot have the effect of impacting the CAPs'
ability to pursue claims in equity under state law.  But because the FCC has
refused to provide the guidance that the SDNY Court – and other courts across the
country – have requested, the CAPs must ask this Court to clarify the law.

### B.     The *Damages Order* Cannot Bar State Claims by Preemption or by Action of the Filed Rate Doctrine

The *Damages Order's* purposely ambiguous language leaves open the
question of whether the FCC believes that its access charge regulations are so
comprehensive that they preempt state law claims, or whether the Filed Rate
Doctrine bars state law claims in equity.  Because the *Damages Order* is vague,
and because, as noted in Background § 4 *supra*, there are conflicting rulings among
the federal courts on these issues, the CAPs briefly address them here.

All of the courts that have dismissed alternative equitable claims have done
so on the grounds that the Filed Rate Doctrine prevents a court from considering
damages claims that could result in payment of rates that differ from the tariffed
rate, or that involve the court in ratemaking.[59] A few courts have adopted, as a

---

[59] *E.g.*, *Qwest Commc'ns Corp. v Aventure Telecom. Servs., Inc.*, 86 F. Supp. 3d
933, 1024 (S.D. Iowa, 2015) (interlocutory ruling dismissing state equity claims in
access stimulation case, on grounds that relief could violate the Filed Rate
Doctrine.); *Peerless Network, Inc. v. MCI Commc'n Servs., Inc.*, 2015 WL
2455128, No. 14 C 7417 (N.D. Ill. May 21, 2015)(Filed Rate Doctrine bars
equitable causes of action in dispute over switched access agreement that
references tariff.);  *XChange Telecom Corp.v. Sprint Spectrum L.P.*, No. 1:14-cv-
54, 2014 WL 4637042 (N.D.N.Y. Sept. 16, 2014) (Filed Rate Doctrine requires

primary or supporting argument, the theory that the FCC's access charge regulatory regime is so comprehensive that it preempts all state claims.[60]

These cases are not applicable to the case at bar, however, because they all assume that an effective tariff is in place at some point – even if the tariff is found to be inapplicable to one type of service or one class of customer, the tariff itself is not voided ab initio. In contrast, in the case at bar, the FCC determined that the CAPs were "shams" and their tariffs were voided ab initio for all services and all customers, and so the FCC's tariff regulations cannot have the preclusive effect found by the other courts. In addition, as evidenced in the cases discussed below, a reasoned examination of the law of regulatory preclusion and the filed rate doctrine compel the conclusion that state law claims are not preempted in the instant case, or in other collection actions where alternative theories of recovery are pled.

_____

dismissal of equitable claims "where an applicable tariff is in place," but also dismisses equitable claims for period prior to time tariff took effect, based on concern that it would be inconsistent with tariffed rate.); *WorldCom v. Paetec*, 2005 WL 2145499, No. Civ. A. 04-1479 (E.D. VA., Aug. 31, 2005), *aff'd*, 204 Fed. Appx. 27, 2006 WL 3026293 (4th Cir. Oct. 25, 2006) (dismissing state law equity claims because carrier "operates under the terms of a tariff," and Filed Tariff Doctrine prevents other claims).

[60] *Connect Insured Tel. Inc. v Qwest Long Distance, Inc.*, No. 3:10-CV-1879-D, 2012 WL 2995063, (N.D. Tex. July 23, 2012) (Dismisses state law claims, in part on grounds that the FCC's access rules only allow collection of access charges via tariff or negotiated contract.); *Union Tel. Co. v. Qwest Corp.*, 495 F.3d 1187, 1197 (10th Cir. 2007) (affirming the district court's dismissal of unjust enrichment claims, even where a tariff was not yet in place, because "allowing [the plaintiff] to recover damages under a theory of unjust enrichment or quantum meruit would frustrate the federal regulatory mechanism.")

### 1.      The FCC Has Not Preempted State Law Equity Claims

The *Damages Order* could be read as an attempt by the FCC to prevent the CAPs from pursuing the state law claims in equity that are pending before the SDNY Court.  The *Order* correctly states that, under the FCC's access charge rules, the CAPs could only obtain compensation "through a valid tariff or a contract negotiated with AT&T."[61]  But the FCC then makes the obfuscatory statements that the CAPs may not "seek equitable relief relating to matters subject to regulation"[62] and, in a footnote, that "Defendants cannot avoid the Commission's regulation of competitive interstate switched access services by violating the very [tariff] rules the Commission created to govern those services."[63] Nowhere in the *Damages Order* does the FCC expressly hold that state equity claims are preempted by its access charge regulations, but these two sentences are ambiguous enough to require that this Court define the scope of the FCC's jurisdiction, and advise the SDNY Court that it may proceed to hear the CAPs' remaining state law claims.

---

[61] *Damages Order*, 30 FCC Rcd at 8963 ¶ 13 n.50, (JA 758-759) citing *See* 47 C.F.R.
§ 61.26; and  *7th Report and Order,* 16 FCC Rcd at 9924 ¶ 3 (2001).
[62] *Damages Order*, 30 FCC Rcd at 8963 ¶ 13. (JA 754)
[63] *Id.* at 8963 ¶ 13 & n.50. (JA 754, 758-759)

Field preemption occurs when a federal law demonstrates that Congress intended to occupy an entire field of regulation exclusively.[64]  The Supreme Court sets a high bar – to preempt state law in an entire field, Congress' preemptive purpose must be "clear and manifest."[65]  Conflict preemption occurs when "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[66]  In applying these principals, numerous courts have found that the FCC's access charge regime has not preempted state claims.  In *Northern Valley v. AT&T*[67] the court refused to dismiss state claims in an access stimulation collection action, finding that there was no "clear and manifest" statement of intent by Congress for the FCC's access charge regulations to preempt all state law claims.  In *US LEC v. Qwest*,[68]another access stimulation collection action, the court rejected the argument that quantum meruit and unjust enrichment claims under state law were "displaced by the telecom regulations."  In *North*

---

[64] *See Freightliner Corp. v. Myrick*, 514 U.S. 280 (1995).

[65] *Jones v. Rath Packing*, Co., 430 U.S. 519, 525 (1977) (quoting *Rice v. Sante Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

[66] *Metrophones Telecomms., Inc. v. Global Crossing Telecomms., Inc.*, 423 F.3d 1056, 1073 (9th Cir. 2005) citing *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992).

[67] *Northern Valley Commc'ns, L.L.C. v. AT&T Corp.*, 1:14-CV-01018-RAL, (D.S.D. August 20, 2015) at 6 JA 766 (order denying partial judgment on the pleadings) citing *Rice v. Sante Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

[68] *US LEC Commc'ns LLC v. Qwest Commc'ns Co. LLC*, Civil No. 10-4106 (JBS/JS), 2011 WL 2474262 (D.N.J. June 20, 2011), at *1.

*County v. Allegiance*[69] the court dismissed arguments that the FCC's access charge regime relating to carrier interconnection agreements was so pervasive as to preempt claims based in state quasi-contract law. In *Metrophones v. Global Crossing*, the court found that the FCC's payphone compensation rules did not preempt state claims, and more importantly, that <u>it is for the court – not the agency – to determine "that the state claim does not exceed its proper scope.</u>"[70]

There is ample precedent showing that the SDNY Court's hearing of equitable claims under state law does not "stand as an obstacle" to the FCC's access charge rules. The language from the *Damages Order* quoted above seems to suggest that, absent a valid tariff or negotiated contract with AT&T, there is no basis in state law on which the CAPs could seek compensation. But this position is clearly belied by the FCC's own prior rulings. The *Farmers & Merchants* case involved an access stimulation dispute by Qwest against the Farmers tariff – there was no negotiated contract between the parties. But in the same order where the FCC found that the access stimulation traffic provided by Farmers to Qwest was outside the Farmers tariff, the FCC made it clear that compensation may yet be available to Farmers, and cited a long line of FCC decisions to support that position:

---

[69] *North County Commc'ns Corp. v. Allegiance Telecom Int'l, Inc.*, No. CV 10-180-PK, 2010 WL 4483587 (D. Or. Oct. 4, 2010).
[70] *Metrophones v. Global Crossing*, 423 F.3d at 1075, citing *Bates v. Dow Agrociencess. LLC*, 544 U.S. 431, 454 (2005) (emphasis added).

> This is not to say that Farmers is precluded from receiving any
> compensation at all for the services it has provided to Qwest. *See*,
> *e.g.*, *New Valley Corp. v. Pacific Bell*, Memorandum Opinion and
> Order, 15 FCC Rcd 5128, 5133, ¶ 12 (2000) (fact that a carrier's
> tariff did not include rates or terms governing the service provided
> did not mean that the customer was entitled to damages equal to
> the full amount billed; rather "where, as here, the carrier had no
> other reasonable opportunity to obtain compensation for services
> rendered . . . a proper measure of the damages suffered by a
> customer as a consequence of a carrier's unjust and unreasonable
> rate is the difference between the unlawful rate the customer paid
> and a just and reasonable rate"), *aff'g New Valley Corp. v. Pacific
> Bell*, Memorandum Opinion and Order, 8 FCC Rcd 8126, 8127,
> ¶ 8 (Com. Car. Bur. 1993) (finding no basis in the Supreme
> Court's "*Maislin* [decision] or any other court or Commission
> decision for the conclusion that a customer may be exempt from
> paying for services provided by a carrier if those services were not
> properly encompassed by the carrier's tariff"). *See also America's
> Choice, Inc. v. LCI Internat'l Telecom Corp.*, Memorandum
> Opinion and Order, 11 FCC Rcd 22494, 22504, ¶ 24 (Com. Car.
> Bur. 1996) (holding that "a purchaser of telecommunications
> services is not absolved from paying for services rendered solely
> because the services furnished were not properly tariffed"). Qwest
> has bifurcated its claim for damages in this case, and thus the
> precise amount of any damages due will be calculated in a separate
> proceeding.[71]

The Commission never issued a "Damages" ruling in that case (apparently

the parties settled), and the FCC never explained how it could hear a complaint

against Qwest, in its role as a customer of interexchange service, and order Qwest

to pay "damages" to Farmers. The FCC and the courts have held that the FCC

does not have authority to hear complaints against IXCs in their capacity as access

---

[71] *Qwest Commc'ns Corp. v. Farmers & Merchants Mut. Tel. Co.*, Second Order
on Reconsideration, 24 FCC Rcd. 14801, 14812 ¶ 24 n.96 (2009) (*F&M 2nd
Recon.*) (emphasis added).

customers – parties wishing to pursue collection actions against IXCs must do so in federal district court.[72]  Nevertheless, footnote 96 from the *F&M 2ⁿᵈ Recon* order, and the FCC decisions cited therein, makes clear that that parties may seek compensation outside of a valid tariff or negotiated contract.

The FCC made a similar finding in the only other case in its history where the FCC found a purported LEC to be a "sham:" *Total Tel. v. AT&T.*[73] In that decision, the FCC found that Total Tel., a CLEC and wholly-owned affiliate of ILEC Atlas Telephone Company, was a "sham" entity.  At the time of the ruling, the FCC regulated ILECs' access charges, but not CLECs', and the FCC found that Total Tel. was formed solely to bill higher access charges than Atlas could, and found that Atlas was the real provider of service.[74]  At the same time, however, the FCC held that its "sham" finding did <u>not</u> preclude Atlas from receiving compensation for the services provided to AT&T:

> We reject AT&T's argument that the unlawful relationship
> between Atlas and Total, in and of itself, makes it unreasonable for
> Total to charge anything for the access services provided to
> AT&T. Complainants did provide a service to AT&T, *i.e.*,
> completing calls from AT&T's customers to Audiobridge. Finally,

---

[72] *E.g.*, *U.S. Telepacific Corp. v. Tel-American of Salt Lake City, Inc.*, 19 FCC Rcd 24552, at 24555-6 ¶ 8 (2004) ("[t]he proper forum for [recovery of unpaid access charges that are allegedly due under the terms of a federal tariff] . . . is the federal district court."); *All American Tel. Co. v. AT&T Corp.*, 26 FCC Rcd 723 (2011) (JA 328) (IXC nonpayment of access charges does not constitute a violation of the Communications Act, and so the FCC has no jurisdiction over such claims.)

[73] *Total Telecomms. Servs. et al. v. AT&T Corp.*, 16 FCC Rcd 5726 (2001).

[74] *Id.* at 5733 ¶16.

> Complainants may not be able to recover their legitimate costs, if
> any, through other means, that they are entitled to recover.[75]

So in two previous § 208 complaint cases that dealt with access stimulation, and
that found that the tariffs at issue were invalid, the FCC expressly found that
compensation to the party generating the access stimulation traffic was not
precluded.  In light of these decisions, the FCC cannot now be heard to hold
otherwise.

In addition to the Commission's own rulings, federal court cases have made
clear that, in cases where tariffs were inapplicable, parties could seek
compensation under state law claims in equity.  In *Hypercube v. Comtel*, the court
found: "Even if Excel is not required to pay Hypercube pursuant to the FCC's
orders, the parties agree that if Excel constructively ordered service from
Hypercube, it is obligated to pay for that service."[76]  In light of these FCC and
court decisions, the two ambiguous sentences in *Damages Order* cannot serve to
preempt state claims in the case at bar.

---

[75]  *Id*. at 5742 ¶ 37.

[76]  *Hypercube LLC v. Comtel Telecom Assets LP*, Civil Action No. 3:08-CV-2298-
G,  2009 WL 3075208 (N.D. Tex. Sept. 25, 2009) at *7, citing *Advamtel LLC, et
al. v. AT&T Corp.*, 118 F. Supp. 2d 680, 687 (E.D. Va. 2000) (discussing the
requirements of a constructive ordering claim in an access collection action.)

**2.     The Twin Purposes of the Filed Rate Doctrine Would Not Be Served by Preemption**

The CAPs note that the application vel non of the Filed Rate Doctrine is not an issue in the instant case – it was not pled by AT&T, and was not invoked by the FCC.  However, because the issue has been considered by numerous courts, the CAPs address it briefly here.

The cases that have denied any preclusive effect of the Filed Rate Doctrine on state law claims generally consider the two "strands" of the doctrine – "nondiscrimination" (preserving uniformity of rates) and "nonjusticiability" (preserving the rate-setting role of the expert agency)[77] – but find that neither strand requires preemption of state law claims.  In *Tekstar v. Sprint,*[78] and *Northern Valley v. AT&T*[79] the courts  noted that the FCC's access charge regulatory scheme allows permissive detariffing for CLEC access services, and rejected arguments that the Filed Rate Doctrine requires dismissal of alternative equitable claims.  The fact that the FCC's access charge regulatory regime expressly allows LECs to set rates by off-tariff contracts, and to dispense with tariffs altogether, makes clear that the concerns over rate uniformity and FCC ratesetting primacy that the Filed Rate

---

[77] *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17 (2d Cir. 1994).
[78] *Tekstar Comms., Inc. v. Sprint Comms. Co., L.P.*, Civil No. 08-1130 (JNE/RLE), 2009 WL 2155930 (D. Minn. July 15, 2009) at *3.
[79] *Northern Valley v. AT&T*, 659 F. Supp. 2d 1056, 1062 (D.S.D. 2009).

Doctrine was designed to enforce are not at issue, and that the Filed Rate Doctrine cannot be used to preempt state law claims.

Another line of cases holds that claims seeking compensation under state law theories of equity are not inconsistent with filed rates if they do not directly challenge the terms or rates of a tariff.[80]  This is particularly the case if the claims in equity seek the same level of compensation set by the FCC in its prescribed rates.[81]  The record of the instant case shows that the CAPs have argued consistently that the tariffed rates of Beehive Telephone – the IXC that the FCC found to be the true provider of the service at issue[82] – are the only rates that can apply, regardless of whether payment is compelled under the filed rate doctrine, equity, or any other theory.[83]  Had the FCC ruled that the CAP state claims were preempted by the Filed Rate Doctrine – and it has not done so – such a ruling could not be supported in light of this precedent.

---

[80] *Id.* at 1060-61 ("The doctrine does not apply where the claim does 'not attack the rate itself' or does 'not require the court to "second-guess" the rate-making agency [here, the FCC]' citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 954 F.2d 485, 490 (8th Cir. 1992).

[81] *Metrophones v. Global Crossing*, 423 F.3d at 1076:  "The state law claim is even stronger when the implied agreement is to pay what the FCC requires. Seeking such payments cannot, by definition, be inconsistent with what the FCC requires. * * * Plaintiff represented in its brief and at argument before this court that it would be seeking, under state law, exactly the same rate of compensation for the same calls as it would be entitled to receive under the federal regulations."

[82] *Damages Order*, 30 FCC Rcd at 8959 ¶ 3. (JA 752-753)

[83] *Recon Petition* at 10, 23-25 (JA 386, 399-400) Answer and Affirmative Defenses (in Damages Phase), dated December 1, 2014 at 7-8 ¶ 17; 12-13 ¶ 29; 13 ¶¶ 30-31; 27 ¶ 57 and *passim.* (JA 543-544, 548-549, 549-550, 563)

### C.    The FCC Cannot Deprive Parties of Legal Recourse in Cases Where There Is a "Gap" in Regulation

In their answer to AT&T's Supplemental Complaint for Damages, the CAPs cited a case from the Southern District of New York – *MetTel. v. GNAPs*[84] – for the proposition that courts may provide equitable relief under state law to parties that are denied recourse through regulatory inaction.[85]  That case dealt with a dispute regarding the application vel non of access charges to voice over Internet protocol (VoIP) traffic, and the circumstances are remarkably similar to the case at bar.  In that case the court noted that:

> This action arises out of the complicated legal tangle . . . exacerbated by the years-long failure of the Federal Communications Commission ("FCC") to act in this area[86] . . . . * * * The FCC, although failing to resolve the relevant issues that fall within its authority, has made statements that complicate the issues before the Court.[87] * * * Against this backdrop are a host of conflicting court and state regulatory rulings that have [made conflicting findings][88] . . . . * * * However, although the Court concludes that the filed tariff rates cannot be applied to the facts of this dispute, the Court concludes that the inability to apply the tariff regime as it stands does not preclude MetTel's entitlement to recover in equity.[89]

---

[84] *Manhattan Telecomms. Corp. v. Global NAPs, Inc.*, No. 08 Civ. 3829 (JSR), 2010 WL 1326095 (March 31, 2010) (*MetTel v. GNAPs*).

[85] Answer and Affirmative Defenses (Damages phase) at 33 ¶ 65 & n.32. (JA 569)

[86] *MetTel v. GNAPs*, 2010 WL 1326095 at *1.

[87] *Id.* at *2.

[88] *Id*.

[89] *Id.* at *3.

Referencing *MetTel v. GNAPs*, the CAPs argued to the FCC that its decisions in the *Liability* and *Damages Orders* had the effect of voiding the CAP tariffs ab initio, six years after the SDNY Court referred its questions to the FCC, and almost a decade after the CAPs began providing service, and in doing so created a "regulatory gap" that could only be filled by the SDNY Court's hearing the CAP claims in equity under state law.[90]  The *Damages Order* responds with the ipse dixit that "[t]he *Liability Order* did not create a 'regulatory gap'" and repeats that under the FCC's access rules, carriers can only recover access charges through tariff or negotiated contract.[91]  The FCC dismisses the *MetTel* decision as inapposite because it deals with VoIP service, and not access stimulation.[92]

But the retroactive invalidation of a tariff inherently creates a regulatory gap, which is why the FCC has never used that practice prior to the access stimulation cases, starting with the *F&M 2nd Recon* decision of 2009.  As a result of the FCC's refusal to answer the questions referred by any of the federal courts in access stimulation cases, and in light of the extraordinary six-year delay in issuing the *Damages Order*, the SDNY Court has been unable to proceed with the case, and all applicable statutes of limitations have expired.   Unless the CAPs have the

---

[90] Answer and Affirmative Defenses (Damages phase) at 33 ¶ 65 & n.32; 46 ¶ 81 & n.60. (JA 569-570, 581-584)

[91] *Damages Order*, 30 FCC Rcd at 8963 ¶ 13 n.50. (JA 758-759)

[92] *Id.* (JA 758-759)

ability to pursue the alternative state law claims in equity that they initially filed with the SDNY Court <u>eight years ago</u>, the CAPs will be without recourse.

The federal cases and FCC decisions cited in Sections II(A) and (B) *supra*, all stand for the proposition that recourse to claims under state law are available when the FCC's tariffing rules do not apply.  One of those cases, *US LEC v. Qwest*, cites the *MetTel v. GNAPs* case with approval for this proposition, and notes that "[t]he Federal Rules of Civil Procedure endorse this kind of [alternative] pleading.  *See* Fed. R. Civ. P. 8(d)(2)."[93]

### D. Denying the CAPs' Right to Recourse Under State Law Would Yield  Unlawful, Absurd, and Inequitable Results

The *Damages Order* dismisses without prejudice AT&T's claims against the CAPs for interest and consequential damages, finding that the claims "are not before us and remain pending before the district court.  We have not denied these claims, and our dismissal of them without prejudice is not intended to preclude AT&T from pursuing them in Court."[94]  AT&T's Supplemental Complaint for Damages claims damages totaling $19,633,000 in direct damages, interest and consequential damages, plus an unspecified amount for attorneys' fees.[95]  After the FCC's award of $252,496.37 in direct damages, the remainder of AT&T's asserted claims against the CAPs, pending before the SDNY Court, is $19,380,503.63.

---

[93] *US LEC v. Qwest*, 2011 WL 2474262 at *3.
[94] *Damages Order*, 30 FCC Rcd at 8962 ¶ 12. (JA 754)
[95] AT&T Supplemental Complaint for Damages, at 4-5 ¶¶ 4-5. (JA 480-481)

If the FCC's findings in the *Damages Order* that "they did not provide a service to, or confer a benefit on, AT&T"[96] and "[i]n any event, the Defendants would not be entitled to compensation because they provided no service to AT&T"[97] are interpreted to foreclose any CAP claims for damages against AT&T under state law, the CAPs will not be able to mount any defense against these AT&T damages claims. Specifically, the ability to argue counterclaims of unjust enrichment or setoff against AT&T would be denied the CAPs because all such defenses are premised on their ability to seek compensation for the benefit AT&T derived from their efforts. Of course, such an outcome is unreasonable on its face, and compels this Court to clarify that the *Damages Order* does not prevent the CAPs from pursuing their claims in equity under state law before the SDNY Court.

## III.   THE FCC'S AWARD OF DAMAGES AGAINST THE CAPS IS UNLAWFUL AND MUST BE VACATED

### A.    The FCC's Ruling

The FCC awarded AT&T "damages" of $252,496.37.[98] This amount was taken from the record of the complaint case, including joint stipulations of the parties, and reflected the amounts that AT&T paid to All American, e-Pinnacle and ChaseCom, in response to their first invoices,[99] before AT&T initiated its practice

---

[96] *Damages Order*, 30 FCC Rcd at 8963 ¶ 13. (JA 754)
[97] *Id.* at 8965 ¶ 20 n.81. (JA 759)
[98] *Damages Order*, 30 FCC Rcd at 8958 ¶ 1 (JA 752)) & 8962 ¶11. (JA 754)
[99] *Id.* at 8962 ¶ 11 n.40. (JA 758)

of unilaterally refusing to pay, despite continuing to take service.  The same record

materials show that the CAPs continued to bill AT&T more than $13 million

during the period at issue.[100]

### B.    The FCC's Award Of Damages Violates the Communications Act, the FCC's Own Rules and Federal Precedent and So Must Be Vacated and Set Aside

The *Damages Order* made no finding of pecuniary loss to AT&T, rather, it

determined, as a conclusion of law, that the CAPs did not have a right to bill any

amount of access charges under its tariff, and so awarded to AT&T "damages" of

$252,496.37 – a refund of the amount that AT&T paid to the CAPs in response to

their first invoices.  In so doing, the FCC award violates the standard required by

federal precedent, the Communications Act and the FCC's own rules.

In their brief to the FCC, the CAPs demonstrated that federal courts and the

FCC have long held that violation of provisions of the Communications Act –

expressly including the provision of service outside of a valid tariff – does not, by

itself, justify an award of damages, and that actual pecuniary loss must be

demonstrated by the complainant.[101]  In *New Valley v. Pacific*, the FCC stated:

---

[100] *Id.* at 8962 ¶ 11 & n.40. (JA 754, 758)

[101] CAP Legal Analysis in Support of Affirmative Defenses, Motion to Dismiss and Petition for Declaratory Ruling, filed in EB-09-MD-010, dated December 1, 2014,  at 15-16 (JA 623-624), citing *New Valley Corp. v. Pacific Bell*, 15 FCC Rcd 5128 (2000) (*New Valley v. Pacific*) (finding that Pacific Bell invoiced, and New Valley paid for, a service that was not listed in the Pacific Bell tariff, but denying New Valley's "damages" claim for a refund of monies paid because it made no showing of pecuniary loss.)

41

> Having established that Pacific Bell had violated section 203 by
> failing to tariff the intrabuilding circuits for which New Valley was
> charged, <u>New Valley was still required to demonstrate that it was
> damaged by Pacific Bell's actions and in what amount.</u>  [T]he
> Bureau properly determined that New Valley's showing falls far
> short in this regard.  * * *  It is well-established that in a formal
> complaint proceeding pursuant to section 208 of the Act, the
> complainant has the burden of establishing: (1) a violation of the
> Act or Commission rules or orders; <u>and</u> (2) <u>actual damages
> suffered as a consequence of such violation.</u>[102]

The CAP Brief also cited *In the Matter of Comsat*[103] in which the FCC held that a

violation of the Communications Act by failing to file a tariff cannot, by itself,

support a claim for damages; rather, complainant has the burden of proving both

the fact and the amount of damages with the same degree of certainty as would be

required to sustain a recovery in a court of law.

The *Damages Order* denies that the above-cited precedent is relevant,

asserting that none of these cases deal with "shams" or findings that "no service"

was provided according to tariff.[104]  But this statement merely confirms that the

FCC awarded damages on the basis of its legal conclusions regarding the CAPs,

not on the basis of AT&T meeting its obligations to demonstrate and quantify the

---

[102] *Id.* at 5133-34 (emphasis added) (footnotes deleted).

[103] *In the Matter of Communications Satellite Corporation [Comsat]  for Authority
to Construct a 'Standard B' Earth Station Antenna and Associated Facilities at
Hickam Air Force Base*, 97 FCC2d 82, 91 (1984) (citing with approval *RCA
Global Communications, Inc. v. Western Union Telegraph Company*, 521 F. Supp.
998, 1006 (S.D.N.Y. 1981) (failure to file tariff does not support claim for
damages; actual damages must be proven).

[104] *Damages Order*, 30 FCC Rcd. at 8962 ¶ 11, n.44. (JA 758)

pecuniary harm AT&T allegedly suffered.   Moreover, in the *New Valley* and

*Comsat* cases, the carriers had no effective tariff, and so it goes without saying that

they did not provide service "under their tariffs."  This is not a basis for

distinguishing cases that denied refund of amounts paid solely upon a showing that

no tariff was in effect.

That the Communications Act requires a fact-based demonstration of

pecuniary loss is further demonstrated by the rules adopted by the FCC in its

*Implementation of the Telecommunications Act of 1996*.[105]  In implementing the

Telecommunications Act of 1996, the FCC made the following findings:  "A

complainant must always . . . prove injury and quantify its monetary damages with

reasonable certainty . . . ."[106] and "[o]nce liability has been determined, the

question of damages is largely a factual one."[107]

In contravention of the applicable precedent, the *Damages Order* did not

conduct any factual inquiry, and made no determination of pecuniary loss

experienced by AT&T.  Instead, it banned discovery and simply concluded that a

refund of amounts paid by AT&T constituted "damages" because the CAP tariffs

were invalid.  Indeed, the only "showing" by AT&T that the FCC cites in granting

its award, is a specific claim for a "refund" of amounts paid, on the grounds that no

---

[105] 12 FCC Rcd 22497 (1997) (*Formal Complaint Order*).

[106] *Id.* at ¶ 186; *see also* 47 C.F.R. 1.722(h).

[107] *Id*. at ¶ 202; *see also id.* at ¶ 191.

valid tariff was in effect.[108]  Indeed, any possibility of a factual determination of

pecuniary loss was foreclosed by the FCC, which refused to allow <u>any</u> discovery in

the Damages complaint proceeding.[109]  This ruling was made in spite of ample

showings on the record that substantial factual issues were raised by both parties.

Those "submissions" referenced in the February 13, 2015 Letter Ruling expressly

listed as the CAPs' "disputed facts":  AT&T received $11 million worth of service,

but paid only "just over $250,000" for it; for every minute of use of service

invoiced by the CAPs, AT&T received revenues from its long-distance customers

and third-party carriers; "AT&T has suffered no damages cognizable" by the

FCC.[110]  AT&T similarly listed a series of disputed facts.[111]  In the face of this

record, it is clear that the *Damages Order's* award of "damages" is based on a

conclusion of law, not on a factual determination.

---

[108] Expert Report of David I. Toof, PhD. In Support of Supplemental Complaint for Damages, at 3-5, ¶¶ 6, 9, 10, 11 (JA 448-450) (cited in *Damages Order*, 30 FCC Rcd at 8962 ¶ 11, n.45). (JA 758)

[109] Enforcement Bureau, Market Disputes Resolution Division (MDRD), Letter Ruling released  in EB-09-MD-010 on February 13, 2015, and signed by Lisa B. Griffin, Deputy Chief, EB/MDRD, at 1:"In addition, the submissions demonstrate that, at this time, there is no need for discovery.  Accordingly, we deny Defendant' First Request for Interrogatories, and the parties may not submit briefs."  (JA 750)

[110] Joint Statement of Stipulated Facts, Disputed Facts and Key Legal Issues, filed in EB-09-MD-010, Proceeding No. 14-209, dated January 20, 2015, at 5-6. (JA 744-745)

[111] *Id.* at 4-5. (JA 743-744)

Moreover, the FCC previously recognized the relevance of the CAPs'
discovery requests to a computation of damages. In the Liability phase of the
proceeding, the CAPs submitted 10 interrogatory requests. The FCC Staff denied
four of the requests, but noted that they "relate[d] to bifurcated damages issues and
[are] therefore denied without prejudice."[112] The FCC thus awarded a refund to
AT&T without a showing of pecuniary harm, an action that violates the Act and
the FCC's own rules, and so merits vacature.

Vacature of the FCC's damages award – and not remand – is required
because of the inordinate delay effected by the FCC at all times relating to the case
at bar. AT&T's first complaint, which initiated the primary jurisdiction referral
made by the SDNY Court, was filed with the FCC on April 20, 2009. The
*Damages Order* was issued on August 21, 2015 – six years and four months later.
This, despite the facts that the FCC was required by statute to complete its
"Liability" phase hearing within five months (47 U.S.C. § 208(b)(1)), and that the
FCC imposes a five- month deadline upon itself for the "Damages" phase of the
proceeding because such practice "furthers the intent . . . [of] Congress."[113] Given

---

[112] Enforcement Bureau, Market Disputes Resolution Division, Letter Ruling
released in EB-09-MD-010 on July 28, 2010, and signed by Lisa B. Griffin,
Deputy Chief, EB/MDRD, at 4 (JA 292) (reconsideration denied in MDRD Letter
Ruling released in EB-09-MD-010 on September 2, 2010, and signed by Lisa B.
Griffin, Deputy Chief, EB/MDRD, at 3). (JA 327)
[113] *Formal Complaint Order*, 12 FCC Rcd 22497 at ¶ 184 (1997).

the extraordinary delay in the case at bar, and the FCC's repeated disregard of

applicable deadlines, vacature is required.[114]

## IV.    THE CAPS ARE ENTITLED TO DECLARATORY RELIEF

The Declaratory Judgment Act provides that a federal court, "[i]n a case of

actual controversy within its jurisdiction, ... upon the filing of an appropriate

pleading, may declare the rights and other legal relations of any interested party

seeking such declaration, whether or not further relief is or could be sought." 28

U.S.C. § 2201.  The D.C. Circuit has adopted a non-exclusive list of "factors

relevant to the propriety of granting a declaratory judgment":

> whether it would finally settle the controversy between the parties;
> whether other remedies are available or other proceedings pending; the
> convenience of the parties; the equity of the conduct of the declaratory
> judgment plaintiff; prevention of procedural fencing; the state of the
> record; the degree of adverseness  between the parties; and the public
> importance of the question to be decided.[115]

Under these guidelines, the CAPs are entitled to the declaratory relief they

seek.  The CAP collection action against AT&T, filed in March 2007, has been

stayed in its entirety since the date of the second referral order, January 19, 2010.

Despite repeated attempts by CAPs to lift the stay and proceed with the case, on

the belief that the FCC would not respond to the SDNY Court's referral questions,

---

[114] *See In re Core Commc'ns, Inc.*, 531 F.3d 849, 850 and *passim* (D.C. Cir. 2008)
(six-year delay by FCC is "egregious" and merits mandamus, and in dicta, such
delays in the future will merit vacature).

[115] *Hanes Corp. v. Millard*, 531 F.2d 585, 591 (D.C. Cir. 1976).

the Judge in that case understandably declined – he referred the issues to the FCC in the first instance because they were technical and the court would benefit from the FCC's expertise.

As detailed in this Brief, the FCC issued its final ruling in the case at bar six years and four months after the SDNY Court referred questions to the FCC (Section III(B), supra);  when it finally did issue the *Damages Order*, it excluded the first and most important questions referred by the SDNY Court, asserting that they are "moot" (Section II(A), supra); the findings in the *Damages Order* are purposefully ambiguous (id.); and the FCC's refusal to take dispositive action in this case, or any of the other access stimulation cases referred to the FCC, has caused substantial confusion in the federal courts, and has led to conflicting rulings on whether equitable relief is available to parties in cases where federal tariffs are involved (Background, Section 4, supra).  The FCC's complete abandonment of its responsibility to provide expert guidance to the courts and to the industry shocks the conscience.

Because the FCC will not act, this Court is required to.  In light of the ambiguity of the *Damages Order*, the SDNY Court requires guidance on its management of the case, and the CAPs require an unambiguous statement of the law so that they may finally proceed to obtain a hearing on claims they attempted to prosecute more than eight years ago.

47

The requested declaratory judgment would allow the SDNY Court to lift the current stay, and will ultimately settle the dispute between the CAPs and AT&T one way or the other.  It would end years of regulatory gamesmanship that has prevented resolution of the dispute, and would assist other courts in addressing what has become a central and highly disputed issue in access stimulation cases across the country.  But most importantly, it is the only recourse available to the CAPs – they can only obtain the relief that they believe is due them in district court, but have been denied that right for six years by an agency that simply refuses to do its job.

For these reasons, the CAPs ask that this Court issue a Declaratory Judgment confirming that:  1) the *Liability Order* had the effect of determining that the CAPs cannot be classified as common carriers, and so are no longer subject to the FCC's Title II jurisdiction; and 2) the *Damages Order* does not, and cannot, prevent the CAPs from pursuing equitable claims in state law before the SDNY Court.

## CONCLUSION

For the reasons discussed in this Brief, the CAPs ask this Court to:

- Issue a Declaratory Judgment that, as a result of the FCC's rulings in the *Liability Order*, the CAPs do not meet the statutory definition of "common carrier" under the Communications Act, and so are not subject to the FCC's Title II jurisdiction, and have not been since the *Liability Order* became final and non-appealable.

- Issue a Declaratory Judgment that the *Damages Order* does not, and cannot, preempt the CAPs' equitable claims based on state law. To the extent that the Court finds that the two ambiguous sentences in the *Damages Order* had the clear intent to effect such preemption, the Court should vacate that part of the *Damages Order*.

- Vacate the FCC's award of $252,496.37 against the CAPs, on the grounds that it was issued as a result of a legal conclusion, and not a factual showing of pecuniary harm, as the Communications Act, FCC rules, and extensive court precedent require. The Court may note that AT&T's claims for such damages are not dismissed with prejudice, and may be pursued in the action pending before the SDNY Court.

Respectfully submitted,

All American Telephone Company, Inc.,
e-Pinnacle Communications, Inc., and ChaseCom


by:    /S/ Jonathan E. Canis
        Jonathan E. Canis
        Arent Fox LLP
        1717 K Street, N.W.
        Washington DC  20006-5344
        202-857-6117
        jonathan.canis@arentfox.com
         their counsel


August 16, 2016

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*12,891*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>August 16, 2016</u>          <u>/s/ Jonathan E. Canis</u>
                                                    *Counsel for Petitioners*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 16th day of August, 2016, I caused this Brief of
Petitioners and Addendum to be filed electronically with the Clerk of the Court
using the CM/ECF System, which will send notice of such filing to the following
registered CM/ECF users:

Lisa S. Gelb
Jacob M. Lewis
Richard K. Welch
C. Grey Pash, Jr.
FEDERAL COMMUNICATIONS COMMISSION
  OFFICE OF GENERAL COUNSEL
445 12th Street, SW
Washington, DC  20554
(202) 418-1720
*Counsel for Respondent Federal Communications Commission*

Jonathan H. Lasken
Robert B. Nicholson
U.S. DEPARTMENT OF JUSTICE
  ANTITRUST DIVISION, APPELLATE SECTION
950 Pennsylvania Avenue, NW
Washington, DC  20530
(202) 514-2413
*Counsel for Respondent United States of America*

Davis M. Gossett
Jonathan B. Sallet
FEDERAL COMMUNICATIONS COMMISSION
  OFFICE OF GENERAL COUNSEL
445 12th Street, SW
Washington, DC  20554
(202) 418-0980
*Counsel for Respondent United States of America*

James F. Bendernagel
Michael J. Hunseder
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC  20005
(202) 736-8000

*Counsel for Intervenor for Respondent*

I further certify that on this 16th day of August, 2016, I caused a copy of this

Brief of Petitioners and Addendum to be served, via U.S. Mail, postage prepaid,

upon:

Letty Friesen – Litigation
Executive Director - Senior Counsel
AT&T Services, Inc.
161 Inverness Drive West
Ofc. 423
Englewood, CO 80112

/s/ Jonathan E. Canis
*Counsel for Petitioners*